NO Payment Received / NO Summ. ISS.

FILED ENTERED
LODGED RECEIVED
NOV 2012
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Ms. MARIA UCHYTIL, on behalf of the United States of America,<br><br>Plaintiff/Relator,<br><br>v.<br><br>AVANADE INC., a Washington corporation, and AVANADE FEDERAL SERVICES, a Delaware corporation.<br><br>Defendants. | Case No. C12-2091 JCC<br><br>**COMPLAINT**<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED**<br><br>**12-CV-02091-CMP** |

Relator MARIA UCHYTIL brings this qui tam action in the name of the United States of America, by and through her undersigned attorneys Donald H. Mullins and Mark K. Davis, and alleges as follows:

## I. PARTIES

1. Relator Maria Uchytil is a resident of the State of Alaska.

2. Defendant Avanade Inc. is a Washington corporation registered to do business in the State of Washington.

3. Defendant Avanade Federal Services is a Delaware corporation registered to do business in the State of Washington.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

4. Defendant Avanade Federal Services is wholly owned and operated by Avanade Inc.

5. Avanade's corporate headquarters are located at 818 Stewart Street, Suite 400, Seattle, Washington 98101.

6. Avanade and Avanade Federal Services conduct business and accept correspondence at offices located in Seattle, Washington.

7. Avanade and Avanade Federal Services may be served with process of this Court through its registered agent: Mr. Doug Sutten, Avanade Inc., 818 Stewart St., Suite 400, Seattle, Washington, 98101.

## II. JURISDICTION AND VENUE

8. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

9. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

10. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 31 U.S.C. § 3730(b)(1) because Defendants have minimum contacts with the United States Government and have transacted business in the District of Columbia.

11. Before filing this complaint, Ms. Uchytil served a copy of the complaint upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information she possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2).

12. Ms. Uchytil has independent and personal knowledge, and is the original source of all publicly disclosed information upon which any allegations herein might rest.

13. Ms. Uchytil has voluntarily provided all information in her possession to the United States before filing this action including: (a) pricing sheets for CRM software, (b)



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

sole source notification letters to Avanade customers, (c) Task Management Tool (TMT) Product Licensing and Implementation Tool, (d) Asset Purchase Agreement dated April 23, 2012, (e) Project Raven Due Diligence Round Table Review dated December 23, 2009, (f) Disclosure Schedules to Asset Purchase Agreement, (g) U.S. License Agreement for Task Management Tool (TMT) v. 2.4, (h) Software and Support Maintenance Agreement, (i) U.S. License Agreement CRM for Accountability Management v. 1.0, and (j) Microsoft Master Subcontractor and Work Order Amendment.

## III. FACTUAL ALLEGATIONS

14. Ms. Uchytil was employed by Avanade Federal Services from August 14, 2000, until January 31, 2012.

15. During her employment, Ms. Uchytil served as the senior director of operations, corporate secretary, director of contracts, facility security officer, and empowered official for expert compliance matters.

16. In May 2010, Avanade acquired a company known as Ascentium.

17. One of the primary assets held by Ascentium at the time was a software tool known as a Customer Relationship Management ("CRM") task management tool (herein referred to as "TMT").

18. The TMT software tool was developed under federal contract with mixed use funding.

19. Due to the mixed federal and contractor funding, the TMT software tool was developed as a noncommercial product.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

20. Inforeliant obtained the prime contract with the federal government to develop the TMT software tool.

21. Inforeliant then subcontracted the project to Microsoft.

22. In turn, Microsoft subcontracted the development of the TMT software tool to Ascentium. Ascentium then developed the TMT tool pursuant to the terms of its contracts with Microsoft and Inforeliant.

23. Ascentium worked to develop the TMT software tool as a noncommercial product to be implemented in the government space. Specifically, the TMT software tool was designed for implementation within the United States department of defense, the United States Air Force, the United States Army, and the United States Navy.

24. The TMT software tool was designed to help military commands to assign, process, and manage various internal tasks.

25. TMT is comprised of a collection of custom .NET and Web 2.0 extensions to Microsoft Dynamics CRM 4.0.

26. TMT includes custom built tools, reports, scripts, and documentation for deployment and support purposes.

27. For instance, the TMT software tool was designed to allow military commands to balance workloads by delegating assignments, communicating with staff, and tracking those assignments and communications.

28. TMT also employs standard authentication protocols to protect sensitive government information.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

29. As a noncommercial product created with government funding, the United States Government retained Government Purpose Rights to use and distribute the TMT software tool.

30. During its acquisition of Ascentium, Avanade acknowledged multiple times that the United States Government possessed intellectual property rights in the TMT software tool.

31. After Avanade acquired Ascentium in May 2010, it sought to repurpose the TMT software tool so that it could be licensed and sold as a commercial product to the United States Government and other entities.

32. As part of this process, Avanade obtained written assurances from Microsoft that it would not assert any licensing or proprietary rights in connection with the TMT tool.

33. After Avanade completed its acquisition of Ascentium, it began work to develop a "clean room" version of the TMT software tool.

34. Avanade attempted to develop a "clean room" version of the software tool so it could be advertised as a proprietary or "sole source" product.

35. Avanade wanted the software tool to be a proprietary product so that it could avoid the competitive bidding process when dealing with the United States government.

36. Developing a clean room version of software free of intellectual property rights restrictions is a time and labor intensive process.

37. Avanade estimated that the clean room process would take approximately two years.

38. As of the current date, Avanade has been unable to complete development of a clean room version of the TMT software tool.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

39. In the December 2011 Asset Purchase Agreement between Avanade and Accenture Federal Services, Avanade identified the creation date for the clean room software (labeled "CRM Accountability Management") as "in progress."

40. Despite the incomplete status of the clean room version, Avanade began taking steps to market and sell the TMT software tool as early as July 2010.

41. Avanade instructed Ms. Uchytil to begin productizing TMT as a commercial software tool so that it could be sold and licensed to agencies within the United States Government.

42. Shortly thereafter, Avanade began selling commercial TMT licenses to numerous commands within the United States Navy, Air Force, Army, and other government entities.

43. As part of her job duties, Ms. Uchytil was required to participate in this process.

44. For instance, Ms. Uchytil was required to send pricing sheets to potential purchasers of the TMT software tool.

45. Avanade's pricing sheet included prices to purchase a Core User License or Edge User License, as well as prices to install, maintain, troubleshoot, and repair the software tool.

46. Ms. Uchytil was also required to respond to inquiries about the product and the potential for competitive bidding.

47. Avanade's CEO, Mr. Howard Kilman, instructed Ms. Uchytil to respond to inquiries with a form letter stating that Avanade was the sole developer of TMT and that TMT remained proprietary to Avanade.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

48. Avanade's TMT v. 2.4 license agreements also contained statements that TMT was a proprietary software product owned wholly by Avanade.

49. TMT v. 2.4 license agreements included a clause requiring government entities with existing TMT licenses to agree to the termination of all rights they had in earlier versions of TMT software.

50. Avanade sold TMT v. 2.4 as a commercial product to U.S. military commands which already possessed Government Purpose Rights in the software.

51. The military commands to which TMT v. 2.4 was sold include Air Force Reserve Command (contract FA6643-11-F-0014, dated 8/19/2011), Special Operations Command (contract FA4814-11-P-0158, dated 9/28/11), Air Force Global Strike Command (contract FA4608-11-P-0064, dated 9/18/2011), United States Northern Command (contract FA2517-11-T-6079, dated 9/26/2011), Air Force District of Washington (contract FA7012-04-C-003/AVND201110050, dated 10/18/2010), U.S. Air Forces in Europe (contract FA5613-10-F-8183/AVND201008117, dated 8/18/2010), U.S. Army in Europe (contract GS00Q09BGD0030/GST0310DS8051/AVND201109058, dated 11/5/2011).

52. At all times relevant hereto, Avanade knew that the TMT software tool was not a proprietary or sole source product.

53. At all times relevant hereto, Avanade knew that the TMT software tool had been developed under a federal contract with taxpayer dollars.

54. At all times relevant hereto, Avanade knew that the United States government retained Government Purpose Rights to use the TMT software tool at its discretion.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

55. Despite knowledge of these facts, Avanade intentionally and falsely stated that the TMT software tool was a proprietary and/or sole source product.

56. Avanade stated that the TMT software tool was a proprietary and/or sole source product in order to avoid the competitive bidding process.

57. Avanade stated that the TMT software tool was a proprietary and/or sole source product in order to inflate pricing for the product.

58. Avanade stated that the TMT software tool was a proprietary and/or sole source product in order to avoid disclosure and/or discovery that the United States government retained Government Purpose Rights to the product.

59. By virtue of its intentional and false statements, Avanade sold and/or licensed the TMT software tool to numerous agencies of the United States government under the premise that it was a proprietary and/or sole source product.

60. As a result of these intentional and fraudulent acts, the United States government was defrauded.

61. On multiple occasions, Ms. Uchytil sent communications to the United States government as well as other vendors stating that the software tool TMT was a proprietary sole source product.

## IV. FIRST CAUSE OF ACTION

## (VIOLATION OF THE FALSE CLAIMS ACT)

62. The paragraphs above are re-alleged and incorporated by reference as though fully set forth herein.

63. As described herein, Defendants, by and through its various officers, executives, agents, representatives, and employees: (a) knowingly presented, or caused to be



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

presented, to the United States Government, a false or fraudulent claim for payment or approval, (b) knowingly made, used, or caused to be made, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and (c) knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

64. Defendants authorized, ratified, and engaged in violations of the False Claims Act committed by its various officers, executives, agents, representatives, and employees.

65. As a direct and proximate result of Defendants' violations of the False Claims Act, the United States Government and the public have been damaged in amount to be proven at trial.

66. Ms. Uchytil requests a jury trial on all triable issues.

## V. JURY DEMAND

67. Plaintiff hereby requests a jury of 12 persons to determine all issues of fact raised herein.

## VI. PRAYER FOR RELIEF

Relator Ms. Uchytil, on behalf of herself and the United States Government, prays for the following relief:

68. For entry of judgment against the Defendants in an amount equal to three times the amount of damages the United States and the public have sustained as a result of the Defendants' violation of the False Claims Act.

69. For entry of judgment against the Defendants in the amount of $10,000 for each violation of the False Claims Act as a civil penalty under 31 U.S.C. § 3729.



BADGLEY ~ MULLINS
LAW GROUP
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

70. For an award in favor of Relator Ms. Uchytil in an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action.

71. For entry of judgment against the Defendants in an amount equal to all costs of this action, with interest, incurred by Relator Ms. Uchytil and the United States Government under 31 U.S.C. § 3729.

72. For entry of judgment against the Defendants in an amount equal to all reasonable attorneys' fees incurred by Ms. Uchytil.

73. For entry of judgment against the Defendants in an amount equal to the pre-judgment interest incurred by Ms. Uchytil.

74. For a jury trial on all issues triable.

75. For all other relief in favor of Relator Ms. Uchytil and the United States Government that this Court may deem equitable or appropriate.

DATED this 29 day of November, 2012.

BADGLEY MULLINS LAW GROUP PLLC

s/ Donald H. Mullins
Donald H. Mullins, WSBA No. 4966

s/Mark K. Davis
Mark K. Davis, WSBA No. 38713
BADGLEY~MULLINS LAW GROUP
4750 Columbia Center
701 Fifth Avenue
Seattle, Washington, 98104
Telephone: (206) 621-6566
Facsimile: (206) 621-9686
donmullins@badgleymullins.com
mdavis@badgleymullins.com