1              UNITED STATES DISTRICT COURT

2         WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____

4                            )
    UNITED STATES OF AMERICA, ex   ) C12-2091-JCC
5   rel, MARIA UCHYTIL,            )
                                   ) SEATTLE, WASHINGTON
6                   Plaintiff,     )
                                   ) October 29, 2014
7   v.                             )
                                   ) Excerpt of the
8   AVANADE, INC., a Washington    ) Motion Hearing
    corporation, and AVANADE       )
9   FEDERAL SERVICES, a Delaware   ) SEALED PER ORDER
    corporation,                   ) OF THE COURT
10                                 )
                    Defendants.    )
11

12  _____

13           VERBATIM REPORT OF PROCEEDINGS
       BEFORE THE HONORABLE JAMES P. DONOHUE
14           UNITED STATES DISTRICT JUDGE
    _____

15

16  APPEARANCES:

17

18

19   For the Plaintiff:     Mark Davis
                            Robert Olson
20
                            Harold Malkin (USA)
21

22   Also present:          Jean DeFond

23

24   For the Defendant:     Ex Parte

25

1          (The following is an excerpt from the hearing.)

2          THE COURT:  Mr. Malkin, can I ask you to sit outside,

3    but to stay close, because --

4          MR. MALKIN:  Absolutely.

5          THE COURT:  -- I may be asking you to come back and

6    forth during this time.

7          MR. MALKIN:  Absolutely.

8          THE COURT:  I'd like to hear from the plaintiffs on

9    this point.  And, again, I apologize for having you go back

10   and forth, but I'm trying to get a better sense of where we

11   are without disclosing --

12         MR. MALKIN:  Of course.

13         THE COURT:  -- or talking about things that have been

14   filed under seal that you are not otherwise aware of.  I was

15   going to ask some questions about the first amended

16   complaint, but since you haven't seen that, then I don't

17   think that it would be appropriate for you to be in the

18   courtroom while I did so.

19         MR. MALKIN:  Agreed.

20         THE COURT:  The record should reflect that Mr. Malkin

21   is leaving the courtroom at the present time.

22              (Mr. Malkin exited the courtroom.)

23         THE COURT:  Okay.  Mr. Davis, I have the motion and I

24   think you heard some of my questions to the United States.

25   And specifically without keying in on a specific resolution

SEALED PER ORDER OF THE COURT

3

1  of this matter, which is why don't I hear from the holder of

2  the privilege as the only answer in this case, why don't I

3  hear from you about that particular issue, that is notifying

4  Avanade, Inc., the holder, who I believe is the holder of the

5  privilege, then getting their perspectives on these issues so

6  it's not done on an ex parte basis.

7          MR. DAVIS:  Sure.  And I don't think we necessarily

8  have an objection to that option as a way to proceed here.

9  Although I would echo Mr. Malkin's comments about there may

10 be some materials here that that is not necessary, because

11 it's such a clear issue, that it is either not privileged or

12 the privilege was waived.  I think we started to touch on

13 some materials in the first amended complaint, as well as

14 Ms. DeFond's declaration, where clearly there's documents,

15 such as a license agreement, that was widely distributed.  I

16 mean, there is no conceivable way that that document could

17 reasonably be subjected to a claim of privilege.

18          THE COURT:  Why are you asking me to bless it, if

19 that's the case?

20          MR. DAVIS:  Well, it's because --

21          THE COURT:  I will tell you one of the concerns I

22 have in here is, I'm trying to be set up as an insurance

23 policy in this case.

24          MR. DAVIS:  Um-hum.

25          THE COURT:  And I don't particularly like being in

SEALED PER ORDER OF THE COURT
4

1   that position.  If it's clear there's no attorney-client

2   privilege associated with it, why do you need my blessing?

3          MR. DAVIS:  And I think that that's because there are

4   multiple layers of documents, and the goal here, I think, is

5   twofold.  One is to protect the government.  Harold and his

6   team have done a significant amount of work since 2012 to

7   investigate Ms. Uchytil's original complaint, disclosure

8   statement.  They interviewed her.  They have since taken

9   action to communicate with Avanade.

10     And so there's a danger there that if they start to see

11  materials and we cross that line, for instance we go from the

12  license agreement to a document that may have a stronger

13  claim of privilege, his entire team could be dismissed and

14  the government may be required to start from scratch with an

15  entirely new team.  So we're trying to protect the government

16  and Mr. Malkin, as well as take the prudent steps on our end.

17  And I can say that Mr. Olson and myself haven't seen most of

18  what Ms. DeFond has, in an abundance of caution.  I mean,

19  we've gotten to that point where we realize there may be some

20  privileged issues here.  And the case law tells us that when

21  in doubt, go seek the court's guidance.

22     Beyond coming back to kind of the layers of documents, you

23  know, we start to get into, for instance, this ownership memo

24  of the software.  Now, from our position, and advocating on

25  behalf of my client, we think that it's pretty clear evidence

SEALED PER ORDER OF THE COURT

1   that any privilege was waived as to those materials.  But I

2   think that's an issue that is appropriate for the court to

3   decide.

4       And that may very well be something that should require

5   motion practice and notice to Avanade.  But, again, that's up

6   to the court's discretion.  I wouldn't presume to instruct

7   how to proceed on those.

8       THE COURT:  You know, there is already, in

9   Ms. DeFond's declaration, an indication that in her view --

10  paragraph 55 says, "Once I reviewed the list of questions, I

11  felt that Mr. Malkin must certainly have obtained a copy of

12  my ownership TMT memo."

13      MR. DAVIS:  Um-hum.

14      THE COURT:  And I guess, as I said, to a certain

15  extent I have the sense that I'm being asked to be an

16  insurance policy for those issues.  Nobody knows how he got

17  that memo, or frankly if he got that memo.  But based on the

18  questions asked, Ms. DeFond believes that Mr. Malkin has a

19  copy of that memo.

20      MR. DAVIS:  And I can answer that question, Your

21  Honor.  Ms. Uchytil also has that memo.  That memo is also

22  part of the initial disclosure statement.  Now, I don't know

23  the extent that Harold and his team has sat down and read

24  through it in detail.  I know that they had it at one point.

25  Through kind of the process of communicating with Avanade,

1   they did raise a claim of privilege as to that document,

2   which is the primary reason the disclosure statement was

3   amended, was to redact that document, as well as to redact

4   portions of two other documents.

5           THE COURT:  Okay.

6           MR. DAVIS:  So we already know they're going to make

7   a claim of privilege.  We think they don't have sufficient

8   grounds to make that claim, for some of the reasons I already

9   mentioned.  But we know that that's going to be a

10  battleground nonetheless.

11          THE COURT:  Okay.  Then here is sort of what I've

12  been thinking, and I want this to be a two-way conversation

13  rather than me just throwing it -- at some point I have to

14  make a decision on it.

15          MR. DAVIS:  Sure.

16          THE COURT:  But I value and welcome your input in

17  that regard.  And what I'm thinking in my stream of

18  consciousness is, I think Ms. DeFond indicated that there

19  might be as many as 1,100 documents that we're dealing with,

20  of which perhaps 100 might be most interesting.  And that

21  being the case, it seems to me that one of the things that

22  was popping in my mind, and tell me again, let's reason

23  through this together --

24          MR. DAVIS:  Okay.

25          THE COURT:  -- is that you would prepare like an

SEALED PER ORDER OF THE COURT

1    attorney -- almost as though you were claiming the privilege.

2         MR. DAVIS:  Um-hum.

3         THE COURT:  But indicating why the privilege wouldn't

4    attach.  But then we would notify Avanade and expect them to

5    come in, and then they could then -- and it may very well be

6    that the only person who could prepare that would be

7    Ms. DeFond herself --

8         MR. DAVIS:  Um-hum.

9         THE COURT:  -- in that regard.  But then send it to

10   Avanade and get Avanade's reaction.  And, again, some of

11   those it sounds like it's pretty clear, from what you've

12   said, that based on disclosure to parties who wouldn't

13   otherwise be able to say that the privilege continues after

14   they've had a chance to look at it, the privilege is waived

15   in that regard.

16        MR. DAVIS:  Um-hum.

17        THE COURT:  And/or issues of the Crime Fraud

18   Exception, and/or some other exceptions that might take

19   place, that I can get Avanade's perspective, and then I can

20   actually make a decision that would give the, what I call the

21   "blessing" that you're looking for.  I don't have any problem

22   doing that.  I do that in a normal case when I have to make a

23   decision on attorney-client privilege issues, but it's

24   generally not in the context of a Crime Fraud Exception where

25   I hear only from one side.

SEALED PER ORDER OF THE COURT

8

1      So that is sort of what I've been thinking, as I've been

2   stewing about this issue.  But I don't want that to be the

3   only alternative that is available.  Tell me how you think --

4   your reactions to that proposal, number one; and alternatives

5   to that proposal that would achieve the goal that you're

6   seeking, but also recognize who the holder of the privilege

7   is.

8           MR. DAVIS:  Well, I do think that that makes sense.

9   And as Harold mentioned, when this issue first cropped up,

10  that was kind of our reflexive reaction was to say we really

11  need to have this battle now, as compared to having some kind

12  of limited or full disclosure to the government, and then a

13  year or two from now Avanade is going to throw a fit, and

14  perhaps rightly so, and change the entire scope of the case.

15     So especially with the court's comments on not wanting to

16  be an insurance policy, that may be the best thing to do is

17  to provide notice, give them a chance to have due process on

18  the issue, and then wherever that leads as far as a ruling

19  and guidance, that will then tell us what documents we may be

20  able to disclose to the government.  And if there would then

21  be a follow-up interview, the government interviewing my

22  client, they will have ground rules on what topics they can

23  and cannot discuss.

24     So that could very well be the best way to proceed here.

25  I think in our motion we tried to give the court other

1   options based on the precedent we were able to find, such as

2   having a pretrial conference, a protective order.  I don't

3   know that those measures go as far as going ahead and having

4   notice and a motion practice.

5       So essentially I think, if I can distill my comments, I

6   agree with the court.  I think that could be the best option

7   here.

8            THE COURT:  Okay.  Then I --

9            MR. DAVIS:  And if I can just supplement, I'll add to

10  that, because I anticipate -- for instance, we were talking

11  about the TMT ownership memo, we think there is clearly not a

12  privilege or the privilege was waived.  I would anticipate

13  that Avanade's counsel will make some kind of argument that

14  Avanade and Accenture are kind of like brother and sister, so

15  somehow the privilege transfers.  And I'm sure they'll come

16  up with a creative argument on that issue.  So that probably

17  does need to be briefed.

18            THE COURT:  Okay.

19            MR. DAVIS:  Because that document is so critical to

20  the case.

21            THE COURT:  Then let's do this in stages.  What I

22  want you to do is figure out a means of identifying the

23  documents that you would like to turn over to the United

24  States.

25            MR. DAVIS:  Okay.

SEALED PER ORDER OF THE COURT

1    THE COURT:  Then, as I've said, prepare what I'll

2  call a reverse privilege log, why is this not privileged, as

3  a preliminary matter.  And then -- so that requires basically

4  Bates stamping each of the documents --

5    MR. DAVIS:  Um-hum.

6    THE COURT:  -- in this case, so we have a control

7  set.  In fact, that should be done in any event.  It sounds

8  like documents were put on a computer and then they were

9  transferred, and some other things, and the rest of this.

10  And you really should have some kind of control mechanism.

11  So I would suggest that all of the documents be Bates stamped

12  that are in Ms. DeFond's possession.

13    Then you can identify, by Bates numbers, those documents

14  that you believe are not privileged.

15    MR. DAVIS:  Um-hum.

16    THE COURT:  And as I said, prepare a reverse

17  privilege log.  Then once that is prepared you can send those

18  materials to me and I will then direct also which materials

19  should be turned over to Avanade for comment, and then we'll

20  do a motions practice on determining which documents can be

21  disclosed and turned over, which ones are not.

22    MR. DAVIS:  Okay.

23    THE COURT:  But then I think that provides a vehicle

24  for -- and until such time as a decision is reached, then

25  these documents are not to be turned over to the United

SEALED PER ORDER OF THE COURT

1   States.

2          MR. DAVIS:  Okay.

3          THE COURT:  But we'll do it on an accelerated basis.

4   I think you have been sitting around, and the United States

5   frankly has been sitting around long enough that we'll

6   expedite that issue, and then we'll have a session and we'll

7   go through each of the documents.  I'll hear from you and

8   I'll hear from Avanade's counsel, and I'll make a decision.

9   And there is either privilege attached to it or there's

10  privilege not attached to it.

11         MR. DAVIS:  Okay.

12         THE COURT:  And then once that decision is made, then

13  it seems to me, then, those issues can be discussed -- excuse

14  me, then it seems to me that I'll come up with an order.  But

15  that will give me the benefit of hearing what Avanade has to

16  say about that issue.  And that should then give what I will

17  call the insurance or the blessing to be able to do this,

18  because they'll be turned over pursuant to court order in

19  that regard.  And I will feel more comfortable doing it,

20  because it will not be on an ex parte basis.

21         MR. DAVIS:  Okay.  That makes sense.

22         THE COURT:  Okay.  What is your sense of timing as to

23  when I can expect these?

24         MR. DAVIS:  I would need to confer with my client a

25  little bit.  Like I said, we haven't seen a great deal of

1    what she has, so it's tough to say.

2         THE COURT:  Again, my recommendation to you is get a

3    control set.  And I'm not sure that -- it's one of those

4    things that -- or she should have a control set, in any

5    event.

6         MR. DAVIS:  Okay.

7         THE COURT:  I don't want to be setting up any kind of

8    a motion to disqualify you --

9         MR. DAVIS:  Yeah, exactly.

10        THE COURT:  -- for example, for having reviewed

11   privileged materials.  Work through that process.  Ms. DeFond

12   can set up, it seems to me, some kind of a controlled

13   process.  But keep in mind the difficulties of chain of

14   custody issues.  Then perhaps it is Ms. DeFond who would then

15   be preparing those things and saying:  These are the

16   documents I'm going to show you, as my attorney --

17        MR. DAVIS:  Um-hum.

18        THE COURT:  -- because I believe these are not

19   privileged documents.  And it seems to me if you follow that

20   basis, then the ability for somebody to say, "Judge, we want

21   to disqualify Mr. Davis because he's viewed privileged

22   documents," is significantly diminished, the risk of that is

23   significantly diminished, because, in fact, you have followed

24   this particular procedure.

25        So, talk with Ms. DeFond, then send -- in fact, what I'm

SEALED PER ORDER OF THE COURT

1  going to suggest is that you actually send me a protocol for

2  how you wish to do it, so I can then say, follow that

3  protocol, and I'll expect these documents by this time.  And

4  I'll send that out in an order after you send me your

5  protocol.

6          MR. DAVIS:  Um-hum.

7          THE COURT:  And then assuming you followed the

8  protocol, then it seems to me that further insulates you from

9  any kind of a motion to disqualify, based on -- and obviously

10 you're not going to be looking at any documents that are, on

11 its face, privileged documents in this matter.  But those

12 that Ms. DeFond, who is an experienced attorney, has good

13 reason to believe might not be privileged, either for the

14 Crime Fraud Exception, for the fact that it's been disclosed

15 to a third party as to whom the privilege would not attach,

16 or other reasons, then it seems to me if you followed that

17 protocol the odds of you being disqualified for having

18 reviewed something that I might later still say that the

19 privilege attaches, would diminish.

20     We have a claw-back provision, as a general proposition,

21 as you know, in the Rule 26 that talks about if there is

22 inadvertent disclosure of attorney-client privilege

23 documents, there's a claw-back provision.  And it doesn't

24 mean that the attorney would be disqualified in that case.

25     So it seems to me if you set up this protocol with the

SEALED PER ORDER OF THE COURT

14

1   general guidelines that I'm suggesting, and then send that

2   protocol to me, I will review the protocol, make some

3   comments on it, and then Ms. DeFond can get to work on

4   outlining who -- I'll call it the anti-privilege log rather

5   than a privilege log -- but following that same basis as to

6   why it should be.  Then we can notify Avanade.  And Avanade

7   can let its views be known.  And that being the case, then as

8   I said, it seems to me that as long as you're not reviewing

9   all these other documents that a privilege might still attach

10  to --

11        MR. DAVIS:  Um-hum.

12        THE COURT:  -- it seems to me that that's a process

13  that provides protection both for your client and for you in

14  that regard.

15        MR. DAVIS:  Yeah, and we appreciate that.  I think

16  that that's a reasonable way to proceed here.  And, again, I

17  think that's, from a bigger picture, that's exactly why we

18  are here --

19        THE COURT:  Okay.

20        MR. DAVIS:  -- is to establish that kind of protocol.

21  And if there's something that we're missing, or something you

22  want to add, we would appreciate your input on the protocol.

23        THE COURT:  I will review your proposed protocol

24  carefully, and I will then issue an order regarding that

25  process.  And the protocol -- and I will also then notify --

1    we'll need to make sure that Avanade gets notice once we're

2    in the process of -- once I've received the claimed privilege

3    waived, or non-privileged applicable documents, then Avanade

4    will get a copy of it.  And as I said, hopefully it will --

5    I'm hoping, for my own sake, that it will not involve 1,000

6    documents.  But perhaps the -- and I'm confident at some

7    point I'm going to direct the parties, just so you're aware,

8    to meet and confer and figure out which ones are really the

9    documents that the court -- you want me to jump in.  There

10   will probably be agreement on a number of documents saying,

11   no privilege attaches because of waiver or other issues.  But

12   -- so there will be a meet-and-confer component.  And then

13   ultimately as to those documents, hopefully relatively few

14   that the parties can't reach agreement on, then I'll make a

15   decision on it.

16        So do you have sort of the general idea that I think

17   we're --

18             MR. DAVIS:  I think so.  And as to your comments

19   about expediting the process, we can certainly do that, to

20   the best of our ability.  In discussing this and trying to

21   analyze this, we have talked about this very possible

22   mechanism for proceeding.  So I think we have a good

23   understanding as to what the court wants, and how we should

24   proceed from here.  So we'll do that promptly.

25             THE COURT:  Okay.  Then, let's see, is there anything

SEALED PER ORDER OF THE COURT

1  else that you'd like to discuss while Mr. Malkin is --

2          MR. DAVIS:  May Ms. DeFond make some statements or

3  ask some questions of the court?

4          THE COURT:  She could.  Good morning, Ms. DeFond.

5          MS. DEFOND:  Good morning, Judge.  I would like to

6  ask a couple of questions.  I have many documents in my

7  hands, some of which are completely unrelated to this matter.

8  And I would hope that my task is to catalog the documents

9  that relate to the qui tam matter, and to then produce the

10  list, or the reverse privilege list that you have indicated,

11  and select and cull an even more selective group of documents

12  that are really at issue, or that really, you know, tell the

13  story, or that really need a decision about privilege.

14      I would hope not to have to catalog literally three or

15  four years of e-mails about wide numbers of matters.

16          THE COURT:  This is a recommendation for you, and it

17  is not a directive, because I'm not going to tell you how to

18  sort of practice law or to preserve documents or things of

19  that nature, but I get involved in a number of cases where

20  there are issues involved alleging spoliation.  And I would

21  recommend that you have -- that you consider talking with

22  somebody who knows something about anti-spoliation law.  So

23  if you have it on disks, or if you have it on a hard drive,

24  it is preserved appropriately.

25          MS. DEFOND:  Um-hum.

1      THE COURT:  So there is no suggesting that you were

2   playing fast and loose with the hard drive, or the CDs, or

3   anything else in that regard.

4      MS. DEFOND:  Um-hum.

5      THE COURT:  And that they actually do the work of

6   having a -- of copying the entire thing and preserving it.

7   And then from that, then -- and making two copies, one which

8   is a sealed copy --

9      MS. DEFOND:  Um-hum.

10      THE COURT:  -- or something.  And the services will

11   know how to do it.  I'm not telling you how to do this.

12      MS. DEFOND:  Um-hum.

13      THE COURT:  Where you have one that is kept, and

14   perhaps you even want to put it in some kind of an escrow

15   account or leave it with your attorneys, or in some fashion

16   where there is no question that when they made this copy that

17   you're producing these things from, you also made this copy

18   and somebody can compare the two.

19      MS. DEFOND:  Um-hum.

20      THE COURT:  So there isn't any suggestion that you've

21   added or deleted something from it.

22      MS. DEFOND:  Yes, I understand.

23      THE COURT:  Anyway, there are services that can do

24   that.  And you shouldn't rely on my advice in that regard for

25   how to do it.  There are services that can do that, that can

SEALED PER ORDER OF THE COURT

1    then talk about how to preserve -- make sure that you've

2    preserved the state of evidence.

3            MS. DEFOND:  Um-hum.

4            THE COURT:  That being the case, I'm really not

5    interested in all of the items that are on the computer or on

6    your hard drive that have no relation to this.  What I'm

7    interested in are documents that relate to the possibility of

8    the qui tam action.  And that those would be documents that

9    would be, in that process of preserving these issues, that

10   you perhaps print -- it's a suggestion, again, you can use a

11   service that knows how to deal with these issues in court.

12           MS. DEFOND:  Um-hum.

13           THE COURT:  But that they then print out, perhaps,

14   again, an individual copy that Bates stamps those saying this

15   one relates to the qui tam action, this one does not.  Nobody

16   is interested, in this action, in other issues that you have

17   with your former employer in this case.

18           MS. DEFOND:  Understood.

19           THE COURT:  So I'm not interested in four years of

20   e-mails that are going out there.  But that being said, you

21   may wish to make sure that you've taken steps to preserve,

22   electronically, a copy of those materials along the lines

23   that I've said, by retaining a service to assist in that

24   process.

25       But ultimately with respect to, then, the documents that

SEALED PER ORDER OF THE COURT
19

1  you're saying, "I think these are the things that are

2  appropriate," burn off a copy of those and Bates stamp those,

3  so we have a control set.  And those are the things that I'm

4  primarily interested in, because the privilege examination

5  will be document by document.  And issues that are not

6  relevant to the qui tam action strike me as there's no reason

7  to be including this at this time.

8      Now, again, that being said, I can anticipate the defense

9  in this case saying:  Give us access to that computer, the

10 whole thing.  I can just see that happening.  And if there's

11 any sense of spoliation that has taken place, that will have

12 a huge impact.  That is, if you start deleting things now

13 because you're saying:  Oh, those don't relate to that, and

14 this is a private matter, and this is X, Y, and Z --

15      MS. DEFOND:  Um-hum.

16      THE COURT:  -- that's a horse of a different color.

17 You need to preserve that hard drive.  You need to preserve

18 that evidence.  And then you can fight those discovery issues

19 in another place.  But if you start withdrawing or getting

20 rid of documents, that's why it's important to have a service

21 be able to come in and say:  Yes, we got this from

22 Ms. DeFond.  We took it, and we took these exact steps.  We

23 duplicated this thing by doing the following processes, one,

24 two, three, four, five, and we've preserved a copy of it.

25      And to the extent that there are some personal items on

SEALED PER ORDER OF THE COURT

1    it, or the rest of that, don't delete it, because you're

2    going to be accused of getting rid of some documents.

3              MS. DEFOND:  Um-hum.

4              THE COURT:  So you have that preservation made.

5              MS. DEFOND:  Um-hum.

6              THE COURT:  Then to the extent, as I said, if there's

7    subsequent litigation and they say they want to look at these

8    things, then somebody can say, no, she wasn't making improper

9    deletions, but these items really are not relevant to this

10   issue.

11             MS. DEFOND:  Um-hum.

12             THE COURT:  And we can confirm this by X, Y, Z.

13   That's a discovery dispute for another day.

14             MS. DEFOND:  Okay.

15             THE COURT:  But don't make that decision now on your

16   own, or you'll be accused of evidence spoliation.

17             MS. DEFOND:  Um-hum.

18             THE COURT:  So, get a service.  The only things that

19   I'm interested in you printing out right now and putting

20   Bates stamps on it are documents you believe could be

21   privileged, associated with --

22             MS. DEFOND:  With this matter.

23             THE COURT:  Yes, ma'am.

24             MS. DEFOND:  Yes.

25             THE COURT:  Does that help?

SEALED PER ORDER OF THE COURT

1    MS. DEFOND:  Yes, that helps a great deal.  And I've

2  always imagined that I would either be required, or at least

3  permitted, to return the hard drive to them.

4    THE COURT:  Well, at some point.  As I said, this is

5  where things can get a little bit nasty on it.  And I'm not

6  giving you legal advice.  You have to follow it from your

7  attorneys and from the services that are out there.  But I

8  would suggest that you consider duplicating that and having a

9  master on this.  And that -- sort of two masters, one that

10  can you work on, work with --

11    MS. DEFOND:  Um-hum.

12    THE COURT:  -- and then one that is preserved

13  someplace else so that there's no question about it.

14    MS. DEFOND:  Um-hum.

15    THE COURT:  But the services that are out there will

16  be able to talk to you about that.

17    MS. DEFOND:  Will know that.  Um-hum.  May I ask one

18  more question?

19    THE COURT:  You may.

20    MS. DEFOND:  When we contemplate the preparation of

21  this list, you know, and then the arguments, conferring at

22  least at first with Avanade about the various documents that

23  I have identified as most important, would that be -- it

24  seems to me that it would be after disclosing to them the

25  existence of the qui tam action.  But I'm not clear on that,

SEALED PER ORDER OF THE COURT

1  because you haven't exactly said that.

2          THE COURT:  I haven't said anything about disclosing

3  the qui tam action.

4          MS. DEFOND:  Um-hum.

5          THE COURT:  I frankly don't know what the rules are

6  in terms of this and the United States.  That will have to be

7  something that will probably seek further input.  And I'll

8  ask Mr. Malkin to come in.  But it seems to me that

9  everything right now is being done under seal.

10         MS. DEFOND:  Um-hum, yes.

11         THE COURT:  And will remain under seal.  So I don't

12  intend that -- I wouldn't expect that you would be disclosing

13  the existence of a qui tam action, unless and until -- excuse

14  me.  I'm not authorizing the disclosure.  I'm not prohibiting

15  it.  I don't know how it works, to tell the truth.  So I'm

16  neither authorizing nor prohibiting the disclosure of the

17  existence of the lawsuit.  It was filed under seal for a

18  reason.  I don't know what the next steps are --

19         MS. DEFOND:  Um-hum.

20         THE COURT:  -- in that case.  You'll have to seek

21  legal advice.  But we will carefully go to the next step,

22  which is figure out -- and I will hear from you and from the

23  United States about how to notify Avanade of the potential --

24  of the attorney-client privilege claim and the discussion on

25  it.

SEALED PER ORDER OF THE COURT

1    MS. DEFOND:  Um-hum.

2    THE COURT:  And we will then figure out what else

3 gets disclosed, and what else doesn't get disclosed.  But

4 that's not in front of me right now.

5    MS. DEFOND:  Okay.  Um-hum.

6    THE COURT:  Right now is just the process of

7 segregating the documents that you believe are appropriate to

8 this matter, and that are not privileged.

9    MS. DEFOND:  Very good.  Thank you.

10    THE COURT:  Okay.  Does that make any sense?  So I'm

11 not authorizing or prohibiting.  I don't know what the next

12 step is, to be quite frank with you.

13    MS. DEFOND:  I'm glad for the instruction to neither,

14 you know --

15    THE COURT:  No, no, no, my instruction is I'm not

16 giving you any instruction.  Because you'll need to seek

17 guidance from your attorneys in that regard, because I don't

18 know that.  And I will be seeking input from the United

19 States and from your attorneys prior to actually engaging in

20 the next step, which is to, once we have that, is to figure

21 out how to notify Avanade of this and to solicit their input.

22 So it's going to be a step-by-step process.

23    MS. DEFOND:  Yes, Your Honor.  Very good.

24    THE COURT:  Anything else?

25    MS. DEFOND:  Not that I can think of right now.

1              THE COURT:  Anything else before I invite Mr. Malkin

2    in?

3         Okay.  My courtroom deputy will invite him to return.

4                 (Mr. Malkin returned to the courtroom.)

5                     (The excerpt concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SEALED PER ORDER OF THE COURT
25

1            C E R T I F I C A T E

2

3

4

5

6        I, Debbie Zurn, RMR, CRR, Official Court Reporter for

7   the United States District Court in the Western District of

8   Washington at Seattle, do hereby certify that I have

9   transcribed the digital tape of the above-proceedings to the

10  best of my skill and ability.

11

12

13

14                              /s/ DEBBIE ZURN

15                              DEBBIE ZURN, RMR, CRR
                                Official Court Reporter
16

17

18

19

20

21

22

23

24

25